

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------
In the Matter of the Application of      x
        :

Masayuki Ishihara, for an order, pursuant to 28
U.S.C. § 1782, to obtain discovery from Goldman :    Misc. _____
Sachs Group, Inc., Goldman Sachs & Co., and
Goldman Sachs International for use in an action
pending in the Civil Division of the Tokyo District:
Court, captioned 2010 (WA)41491 ................... x

# 13 MISC 0280

### DECLARATION OF AKIO SATO IN SUPPORT OF
### APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER
### COMPELLING DISCOVERY FOR USE IN A FOREIGN LITIGATION

Pursuant to 28 U.S.C. § 1746, I, Akio Sato, declare under penalty of perjury as follows:

1.     I, Akio Sato, am a partner at the law firm SATO & Partners in Tokyo, Japan. I
represent the Plaintiff, Masayuki Ishihara, in connection with the above-captioned Japanese
litigation.

2.     I am familiar with the facts set forth in this Declaration, either from personal
knowledge or on the basis of documents that have been provided to me. Insofar as they are
within my own knowledge, the facts and matters testified to are true to the best of my own
knowledge and belief.

#### Purpose of the Application

3.     I submit this Declaration in support of Mr. Ishihara's Application pursuant to 28
U.S.C. § 1782 for issuance of an order compelling Goldman Sachs Group, Inc., Goldman Sachs
& Co., and Goldman Sachs International (collectively, "Goldman Sachs") to produce certain
documents and produce an officer, director, or managing agent, or another person who consents
to testify on Goldman Sachs' behalf to provide deposition testimony for use in a civil proceeding

currently pending in Japan before the Tokyo District Court, Civil Division, captioned 2010 (WA)41491 (the "Japanese Action").

4.      Mr. Ishihara is a Japanese businessman who has suffered the equivalent of approximately $55 million in mark-to-market losses on nine trades that he entered upon the unlawful and improper investment advice of Goldman Sachs Japan Co., Ltd. ("Goldman Sachs Japan"). In an utter abdication of its duty to provide competent and honest investment advice, Mr. Ishihara's brokers at Goldman Sachs Japan misrepresented the risk, liquidity, and potential returns related to a variety of exotic and highly complex structured financial products. On the basis of these misrepresentations, Mr. Ishihara, who had clearly-stated conservative investment objectives, with a goal of preserving liquidity and protecting his principal investment, was induced to make investments in financial products that were almost perfectly incommensurate with his objectives.

5.      On November 5, 2010, Mr. Ishihara commenced an action against Goldman Sachs Japan, the Japanese broker-dealer subsidiary of New York-based Goldman Sachs Group, Inc., and affiliate of New York-based U.S. broker-dealer Goldman Sachs & Co. and London-based European investment bank Goldman Sachs International, seeking: (a) rescission of the nine trades and restitution of the equivalent of approximately $55 million that he incurred as a direct result of Goldman Sachs Japan's unlawful misrepresentations, based on the doctrine of "misrepresentation" in the Japanese Civil Code; and (b) alleging alternative tort and contract claims for unsuitability and breach of the Japanese civil law "duty of explanation." The litigation is pending in the Civil Division of the Tokyo District Court.

6.      Mr. Ishihara seeks the aid of this Court in order to meaningfully prosecute his $55 million equivalent claim against the subsidiary of one of the United States' largest investment

banks. To date, Mr. Ishihara has been frustrated in his attempts to gather even the barest documentary and testimonial evidence concerning the transactions and products at issue by Goldman Sachs Japan's refusal to produce documents for review or witnesses for examination. Mr. Ishihara has also unsuccessfully requested that the Japanese court enforce his discovery requests against Goldman Sachs Japan.

### The Involved Parties

7.     Plaintiff to the Japanese Action, Mr. Ishihara is a Japanese citizen residing in Tokyo. Mr. Ishihara is Chairman of Heiwa Co. Ltd. and Chairman and founder of Olympia Co. Ltd., companies which produce and sell arcade machines commonly known in Japan as pachinko-slot machines.

8.     Defendant to the Japanese Action, Goldman Sachs Japan is a Japanese investment bank and wholly-owned subsidiary of Goldman Sachs Group, Inc, with its headquarters located in Tokyo, Japan.

9.     I believe that Goldman Sachs Group, Inc., Goldman Sachs & Co., and Goldman Sachs International, all related entities to Goldman Sachs Japan located in the Southern District of New York, maintain access in the ordinary course of business to relevant documents originating in the physical custody of Goldman Sachs Japan.

10.     Further, I believe that Goldman Sachs Group, Inc., Goldman Sachs & Co., and Goldman Sachs International hold information and documents within this jurisdiction that are necessary to enable Mr. Ishihara to prosecute his claims against Goldman Sachs Japan, as set forth with greater specificity below.

11.     Goldman Sachs Group, Inc., from whom Mr. Ishihara seeks discovery, is the New York-based parent company of Goldman Sachs Japan, Goldman Sachs & Co., and Goldman

Sachs International, among other wholly-owned subsidiaries.   Goldman Sachs Group, Inc. maintains its headquarters at 200 West St., New York, NY 10282.   I believe that as corporate parent of Goldman Sachs Japan, Goldman Sachs Group, Inc.—which through its holdings maintains a global swaps and trading book—would have information in its possession, custody, or control, or otherwise accessible to it in the ordinary course of business, relating to all aspects of Mr. Ishihara's account with Goldman Sachs Japan, including any reports or memoranda arising from the transactions at issue in this case.   In this connection, I believe that Thomas Montag served simultaneously, *inter alia*, as Co-President of Goldman Sachs Japan, on the Executive Committee of Goldman Sachs Group, Inc., and as Goldman Sachs' global head of derivatives at or around the time period during which Goldman Sachs acted as Mr. Ishihara's investment broker.   Moreover, I believe that Goldman Sachs Group, Inc. served as guarantor of the put options in at least two of the products on which Mr. Ishihara suffered massive losses.

12.     Goldman Sachs & Co., from whom Mr. Ishihara also seeks discovery, is the New York-based U.S. broker-dealer affiliate of Goldman Sachs Japan and fellow subsidiary of Goldman Sachs Group, Inc.   Goldman Sachs & Co. is formed under New York law and is found at 200 West St., New York, NY 10282.   Goldman Sachs & Co. was listed as a "Specified Entity" in the Schedule to the ISDA Master Agreement between Goldman Sachs Japan and Mr. Ishihara, such that any default on the part of Goldman Sachs & Co. (in connection with a specified transaction with Mr. Ishihara) would trigger a default with respect to Goldman Sachs Japan.   I believe that Goldman Sachs & Co. was involved in trading and pricing the products at issue in this case, and thus would have information relating to the structure and terms of the products, as well as any internal strategies to hedge risks associated with trading the products.   Moreover, I believe that, as the flagship broker-dealer in the Goldman Sachs empire, Goldman Sachs & Co.

is responsible for developing global, firm-wide policies for suitability and client approval, and metrics for assessing risk and compliance.

13.    Goldman Sachs International, from whom Mr. Ishihara also seeks discovery, is a London-based European investment bank, affiliate of Goldman Sachs Japan, and fellow subsidiary of Goldman Sachs Japan. Goldman Sachs International is found at 200 West St., New York, NY 10282. Goldman Sachs International was also listed as a "Specified Entity" in the Schedule to the ISDA Master Agreement between Goldman Sachs Japan and Mr. Ishihara, such that any default on the part of Goldman Sachs International (in connection with a specified transaction with Mr. Ishihara) would trigger a default with respect to Goldman Sachs Japan. I believe that Goldman Sachs International was involved in trading and pricing the products at issue in this case, and thus would have information relating to the structure and terms of the products, as well as any internal strategies to hedge risks associated with trading the products. Moreover, I believe that Goldman Sachs International was guarantor, calculation agent, trading administrator, and/or legal or de facto counterparty for several of the impugned transactions.

**The Japanese Action**

14.    The Japanese Action centers around a series of financial products sold to Mr. Ishihara between April 2005 and August 2007, on which transactions Goldman Sachs Japan acted as investment broker.

15.    In January 2005, Mr. Ishihara was introduced to two executives in Goldman Sachs Japan's corporate sales department, Masaki Gobayashi and Fumiko Ozawa, who represented themselves to Mr. Ishihara as experienced investment professionals. On January 28, 2005, Mr. Ishihara entered into an ISDA Master Agreement, Schedule, and Credit Support Annex with Goldman Sachs Japan to govern the terms of any derivatives transactions between

the parties. Over the course of his relationship with Goldman Sachs Japan, Mr. Gobayashi
served as Mr. Ishihara's primary broker.

16.     At their initial meeting with Mr. Ishihara, Mr. Gobayashi and Ms. Ozawa failed to
inquire into Mr. Ishihara's investment experience, knowledge, or objectives. In fact, Mr.
Ishihara had no experience trading in below-par securities or exotic debt instruments, and
communicated directly and repeatedly to Mr. Gobayashi that he preferred to invest exclusively in
financial products that exhibited high liquidity and low risk profiles, including an absolute return
on his principal investment. Mr. Gobayashi was aware that Mr. Ishihara does not speak, read,
write, or understand English, and thus that he relied on Goldman Sachs Japan's explanations of
the terms being offered and the structure of the offered products, as such terms and structure
were often presented in English.

17.     The central claim of the Japanese Action is that, through material
misrepresentation and omission, Mr. Gobayashi and other brokers at Goldman Sachs Japan
induced Mr. Ishihara's investment in products with the precise *opposite* characteristics and
structure to his objectives. By way of example, one product marketed and ultimately sold to Mr.
Ishihara by Goldman Sachs Japan in March 2006, under the name "15NC8 Year USD 100%
Principal Protected Note Linked to a Portfolio of Hedge Funds & Investment Grade Debt," and
structured as a Euro Medium Term Note, was effectively an investment in hedge funds with less
than a two year track record. The original and complete documentation for this product was
presented in English, which Mr. Ishihara could not understand. The Japanese summary for this
product likewise was incomprehensible to Mr. Ishihara, and would have been incomprehensible
to even a relatively experienced investor, due to its complexity and technicality. Induced to enter
the transaction on the advice of Mr. Gobayashi, and explained neither the structure nor risks of

the product, Mr. Ishihara has to date suffered mark-to-market losses of the equivalent of $1.3 million on this highly risky, illiquid, and completely unsuitable bet on rookie hedge funds.

18.     Another unsuitable product marketed and sold to Mr. Ishihara by Goldman Sachs Japan in March 2006, under the name "Yen/USD Long Dated FX Transaction," is an exotic ten-year currency swap contract with Goldman Sachs Japan as counterparty. By the terms of the transaction, Goldman Sachs Japan reserves the sole right of termination. Again, Mr. Gobayashi induced Mr. Ishihara to enter into this highly complex and unfavorable transaction by misrepresenting its terms and degree of risk. To date, Mr. Ishihara has suffered realized losses on the product of the equivalent of $29.3 million.

19.     Other products sold to Mr. Ishihara over the course of his brokerage relationship with Goldman Sachs Japan included emerging market debt, currency derivatives, basket equity swaps (again with Goldman Sachs Japan as counterparty), and preferred securities in a distressed company. All of these products sold to Mr. Ishihara exhibited low liquidity and/or high risk, and exposed Mr. Ishihara to massive and ongoing losses on his principal investments.

20.     Mr. Gobayashi and other brokers at Goldman Sachs materially misrepresented the structure and terms of the products and underlying securities to Mr. Ishihara, such that he made investments that he would otherwise have rejected. *First*, Mr. Gobayashi assured Mr. Ishihara that there was a robust secondary market for products for which there was, in reality, no such market. Furthermore, Goldman Sachs cross-collateralized many of the transactions, such that Mr. Ishihara has been unable to unilaterally exit transactions for which he has suffered massive and ongoing losses. *Second*, Mr. Gobayashi explained that several products with 30-year maturities would be redeemed in the short term via prepayment or rearrangement; to date, there has been no early redemption of the products. *Third*, Mr. Gobayashi told Mr. Ishihara that the products paid

interest rates of eight (8%) or ten percent (10%) annually; in fact, Mr. Ishihara was regularly paid interest at a lower rate.

21.     On the basis of these misrepresentations, Mr. Ishihara has alleged a claim under the Japanese Civil Code for "misrepresentation," seeking rescission of the transactions and restitution of his mark-to-market losses in the amount equivalent to approximately $55 million. In addition, Mr. Ishihara brought alternative claims under tort and contract for breach of the investment suitability rule, and breach of the Japanese civil law duty of explanation.

**The Requested Discovery is Unavailable to Mr. Ishihara**

22.     Mr. Ishihara has been unable to obtain the information necessary to prosecute the Japanese action by voluntary disclosure from Goldman Sachs Japan. The document production made by Goldman Sachs Japan in the Japanese Action was extremely limited, and did not include the documents and communications needed to prove or disprove Mr. Ishihara's claims. For example, Mr. Ishihara requested the following material information and documents from Goldman Sachs Japan that it has failed to produce: information and documents related to Goldman Sachs' decision-making process for marketing and selling the relevant products to Mr. Ishihara; the internal reports of Ms. Ozawa and Mr. Gobayashi regarding the transactions between Mr. Ishihara and Goldman Sachs Japan; and the document entitled "Transaction Commencement Standards," which Goldman Sachs Japan creates and maintains in accordance with the regulations of the Japan Securities Dealers Association.

23.     Mr. Ishihara has unsuccessfully requested that the Japanese court enforce its discovery requests against Goldman Sachs Japan. Moreover, Japanese courts cannot compel discovery for entities located outside of Japan.

24.     In short, Mr. Ishihara has received a materially deficient production of documents from Goldman Sachs Japan related to the transactions at issue in this litigation—

documents without which he will be hindered from prosecuting his claims. Therefore, Mr.
Ishihara relies on this Section 1782 Application for those entities residing in this District and
over which this Court has jurisdiction.

### Japanese Courts Would Be Receptive to the Requested Discovery Because It Is Highly Relevant to Mr. Ishihara's Claims

25.     The next status hearing in the Japanese Action is currently scheduled for August
20, 2013.

26.     Japanese courts are receptive to discovery obtained abroad. Admissibility of
evidence is not limited in Japanese Civil Court. The Japan Supreme Court has affirmed the
decisions of the Tokyo District Court and Tokyo High Court that all evidence is admissible in
principle under the Japan Code of Civil Procedure, including statements made by a witness in a
foreign court, even if such testimony was not made in court or cross-examination of the witness
was not allowed. *See* Hanrei-jihou 1539-61 (June 1995).

27.     I believe that the information that Mr. Ishihara seeks from Goldman Sachs entities
located in this District will allow him to meaningfully litigate his claims against Goldman Sachs
Japan. Specifically, and as set forth with greater particularity in the Proposed Subpoena attached
hereto, Mr. Ishihara seeks, *inter alia*, (a) information concerning to the terms, structure, risks,
call features, payout features, projected performance, secondary market, and counterparties of
the financial products at issue; (b) information concerning Goldman Sachs' understanding
of Mr. Ishihara's investment objectives; (c) information concerning Goldman Sachs'
internal policies for assessing risk and suitability, and soliciting client approval, and the
extent to which these policies were followed for Mr. Ishihara's account and transactions;
and (d) information concerning internal strategies to hedge any risk arising from trades of the

products at issue. In sum, I believe that the requested information bears directly and indisputably on Mr. Ishihara's claims.

28.    Absent the granting of the requested order, Mr. Ishihara may not otherwise be able to obtain what are expected to be highly relevant and probative documents, information, and testimony.

WHEREFORE, the undersigned respectfully requests that the Court enter the attached Proposed Order, pursuant to 28 U.S.C. § 1782, directing Goldman Sachs Group, Inc., Goldman Sachs & Co., and Goldman Sachs International to produce certain documents and produce an officer, director, or managing agent, or another person who consents to testify on Goldman Sachs' behalf to provide deposition testimony for use in a civil proceeding currently pending in Japan before the Tokyo District Court, Civil Division, captioned 2010 (WA)41491.

Executed in Tokyo, Japan, on _July 30_ , 2013.

_Akio Sato_
Akio Sato